Case 09-01267   Doc 15   Filed 03/18/10   Entered 03/22/10 11:02:21   Desc Main
Document   Page 1 of 15

09-01267:9.0-Proposed Findings of Fact and Conclusions of Law:Main Document Entered: 3/15/2010 2:49:56 PM by:David L Freidberg Page 1 of 15

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| IN RE: KALIED J. KANAN, | CHAPTER 7 |
| DEBTOR. | CASE NO. 09-33071 |
| AMERICAN EXPRESS CENTURION BANK, | |
| PLAINTIFF, | ADVERSARY NO. 09-01267 |
| vs. | HON. JACK B. SCHMETTERER |
| KALIED KANAN a/k/a KALIED J. KANAN, | |
| DEFENDANT. | |

## ~~PROPOSED~~ FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT AND DEFAULT JUDGMENT

THIS PROCEEDING is before the Court on a Complaint to Determine Dischargeability of consumer debt pursuant to 11 U.S.C. §523(a)(2)(A) and (a)(2)(C). The Defendant failed to answer and the Plaintiff moved for entry of default judgment under Rule 55 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Rule 7055 of the Federal Rules of Bankruptcy Procedure. Based upon the evidence before the Court, the Court makes [enters] the following Findings of Fact and Conclusions of Law to be entered pursuant to Rule 52 of the Federal Rules of Civil Procedure and Rule 7052 of the Federal Rules of Bankruptcy Procedure:

### FINDINGS OF FACT

1. On September 4, 2009, the Defendant filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.

1

Case 09-01267    Doc 15    Filed 03/18/10    Entered 03/22/10 11:02:21    Desc Main
Document    Page 2 of 15

09-01267:9.0:Proposed Findings of Fact and Conclusions of Law:Main Document Entered: 3/15/2010 2:49:56 PM by:David L Freidberg Page 2 of 15

2. American Express is the holder of an unsecured claim against the above captioned Defendant arising from card account number xxxx-xxxxxx-x1005 ('the Account").

3. The Account was opened by the Defendant in February of 2007.

4. The balance of the Account as of the date of the filing of the Chapter 7 petition was $15,868.99.

5. The terms and conditions of the account agreement between the Defendant and American Express for the Account, call for the payment of reasonable attorneys' fees and all costs expended by American Express in the collection of the Account.

6. On December 10, 2009, American Express timely filed a Complaint to Determine Dischargeability of Debt (the "Complaint") pursuant to 11 U.S.C. §523(a)(2)(A) and (a)(2)(C).

7. The Court has reviewed the record before it, including the Defendant's Petition, Schedules and Statement of Financial Affairs, the Complaint and its Exhibits, as well as the testimony contained in the Plaintiff's Affidavit in support of its case.

8. Between July 2, 2009 and August 13, 2009, the Defendant used his American Express card in fifty-nine (59) transactions totaling $9,990.51 on the Account for various luxury goods and services.

9. This entire amount was incurred for luxury goods and services on or within 90 days prior to the filing of the bankruptcy petition and may be presumed nondischargeable pursuant to 11 U.S.C. §523(a)(2)(C).

10. The above-mentioned charges include, but are not limited to, three (3) charges totaling $2,662.75 incurred at BEST BUY for "electronics" in Orland Park, IL; five (5) charges totaling $1,274.51 incurred at WALMART for "general merchandise" in Orland Hills, IL; seven (7) charges totaling $1,262.65 incurred at COSTCO in Orland Park, IL; one (1) charge in the

Case 09-01267 Doc 15 Filed 03/18/10 Entered 03/22/10 11:02:21 Desc Main
Document Page 3 of 15

09-01267:9.0:Proposed Findings of Fact and Conclusions of Law:Main Document Entered: 3/15/2010 2:49:56 PM by:David L Freidberg Page 3 of 15

amount of $706.91 incurred at ORLAND TOYOTA in Tinley Park, IL; two (2) charges totaling $706.91 incurred at JCPENNEY STORE for "better watches, F Jewelry Serv, 7-16 Bottoms, and 4-7 Bottoms" in Orland Park, IL; one (1) charge in the amount of $658.45 incurred at BABIES R US for "children's clothing" in Orland Park, IL; one (1) charge in the amount of $491.68 incurred at CASUAL MALE in Orland Park, IL; three (3) charges totaling $230.49 incurred at ULTA, a cosmetics store in Orland Park, IL; two (2) charges totaling $183.01 incurred at BURLINGTON COAT FACTORY for "family clothing" in Tinley Park, IL; one (1) charge in the amount of $135.00 incurred at JERUSALEM JEWELRY in Bridgeview, IL; and one (1) charge in the amount of $69.10 incurred at GAMESTOP in Orland Park, IL.

11. Between July 2, 2009 and the date the Defendant filed his bankruptcy petition, the Account was credited $31.07 for returned merchandise and service.

12. The terms and conditions of the account agreement between the Defendant and American Express call for a minimum payment of the charges due on the Account.

13. During the time period at issue, the Defendant submitted one payment in the amount of $115.00. The payment posted on July 21, 2009 and was applied toward the prior month's balance.

14. American Express avers that, according to the terms and conditions of the account agreement between the Defendant and American Express, they may apply and allocate payment and credits among balances and charges on the Account in any order and manner determined by them in their sole discretion. Consequently, no payment or credit was applied to the charges at issue.

3

09-01267:9.0:Proposed Findings of Fact and Conclusions of Law:Main Document Entered: 3/15/2010 2:49:56 PM by:David L Freidberg Page 4 of 15

15. The Court takes judicial notice of the facts contained in the Defendant's Petition, Schedules and Statement of Financial Affairs, all of which were signed under penalty of perjury by the Defendant.

16. According to the Defendant's bankruptcy petition and schedules, the Defendant's current net monthly income totals $0.00, while his fixed monthly expenses, not including payments to service his unsecured nonpriority debt, total $3,016.00. The Defendant states that he is unemployed. The Defendant's unsecured nonpriority debt totals $1,249,870.93; of this amount, $25,317.97 appears to be credit/charge card debt.

17. The Defendant's Statement of Financial Affairs, Item #1, lists "income from employment" in the amount of $17,835.00 for 2008 "wages." The Defendant's Statement of Financial Affairs, Item #2, lists "income other than from employment" in the amount of $28,537.00 in 2008 for "Sch D" and $2,910.00 in 2008 for "ch. E."

18. The Defendant did not have any additional anticipated income he could have used to pay the amounts due to American Express.

## CONCLUSIONS OF LAW

19. The Court has jurisdiction over this case pursuant to 28 U.S.C. §157(a), (b)(1), (b)(2)(I), §1334(b) and 11 U.S.C. §523(c). It is a core proceeding.

20. The Court finds that American Express effectuated proper service of its Complaint upon the Defendant.

21. The Defendant has failed to file a timely Answer or other responsive pleading pursuant to Rule 12 of the Federal Rules of Civil Procedure and Rule 7012 of the Federal Rules

of Bankruptcy Procedure, has not requested an extension of time to do so, and has not presented a defense or otherwise appeared in this matter.

22. Based upon the factual record and evidence before this Court, American Express has demonstrated a prima facie case under 11 U.S.C. §523(a)(2)(A) and (a)(2)(C) and is entitled to a nondischargeable judgment.

23. Default judgments in bankruptcy proceedings are governed by Rule 55(b) of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Rule 7055 of the Federal Rules of Bankruptcy Procedure.

24. Under Rule 55(b), the court has discretion to "conduct such hearings . . . as it deems necessary and proper" to determine whether a default judgment should be entered.

25. Rule 8(d) of the Federal Rules of Civil Procedure, incorporated by Rule 7008(a) of the Federal Rules of Bankruptcy Procedure, provides that "[a]verments to which a responsive pleading is required . . . is deemed admitted when not denied in the responsive pleading." See In re Goycochea, 192 B.R. 847 (Bankr. D. Md. 1996) (court held that when a Chapter 7 debtor failed to answer a nondischargeability complaint, all of the facts in Creditor's Complaint had to be accepted as true for the purpose of deciding whether creditor was entitled to entry of judgment by default).

26. However, as another court has noted "Although, well-plead facts in the complaint are generally taken as true, the defendant does not by default admit conclusions of law." In re Paul, 266 B.R. 686, 693 (Bankr. N.D. Ill. 2001).

27. Thus, the court will enter default judgment where the evidence establishes a prima facie claim that the debt in question is excepted from discharge under 11 U.S.C. §523(a)(2)(A) and (a)(2)(C).

Case 09-01267    Doc 15    Filed 03/18/10    Entered 03/22/10 11:02:21    Desc Main
                                    Document    Page 6 of 15

09-01267:9.0:Proposed Findings of Fact and Conclusions of Law:Main Document Entered: 3/15/2010 2:49:56 PM by:David L Freidberg Page 6 of 15

28.     11 U.S.C. Section 523(a)(2)(A) provides as follows:

(a) A discharge under Section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor...from any debt -

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extend obtained by -

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

(C)(i) for purposes of subparagraph (A) of this paragraph,
(I) consumer debts owed to a single creditor and aggregating more than $550.00 for "luxury goods or services" incurred by an individual debtor on or within 90 days before the order for relief under this title are presumed to be nondischargeable; and
(C)(ii) for purposes of this subparagraph-
(II) the terms "luxury goods or services" does not include goods or services reasonably necessary for the support or maintenance of the debtor or a dependent of the debtor.

29.     As to the Plaintiff's claim under §523 (a)(2)(C), evidence shows that the Defendant made fifty-nine (59) charges totaling $9,990.51 for luxury goods and services on or within 90 days prior to the filing of the bankruptcy petition.

30.     The charges within the 90 day "presumption" period included large purchases at stores such as BEST BUY, JC PENNEY STORE, CASUAL MALE, JERUSALEM JEWELRY, ULTA, AND GAMESTOP.

31.     These charges were for nonessential and clearly luxurious items such as electronics, watches, clothing, cosmetics, and jewelry. See In re Rusu, 188 B.R. 325 (Bankr. N.D. Ga. 1995) (electronics, liquor and visits to adult entertainment clubs held to be luxury goods and services); see also Tabar, 220 B.R. at 704 (purchases are luxury goods or services

6

Case 09-01267    Doc 15    Filed 03/18/10    Entered 03/22/10 11:02:21    Desc Main
                        Document       Page 7 of 15

09-01267:9.0:Proposed Findings of Fact and Conclusions of Law:Main Document Entered: 3/15/2010 2:49:56 PM by:David L Freidberg Page 7 of 15

depending upon whether the item purchased served any significant family function and whether the transactions evidenced some fiscal irresponsibility); In re Ellingsworth, 212 B.R. 326 (Bankr. W.D. Mo. 1997) (the court can decide whether purchases are luxury goods based upon the account statements and nature of the items purchased); In re Lipsey, 41 B.R. 255 (Bankr. E.D. Pa. 1984) (hotel, restaurant and bar services held to be "luxury").

32. While the precise nature of what was purchased may not be clear from the account statements provided, the amount of the charges, and the fact that the charges were made at various department store and specialty retailers, leads this Court to conclude that the charges were incurred for luxury items, not reasonably necessary for the maintenance and support of the Defendant or his dependents.

33. In order to except a debt from discharge under §523(a)(2)(A), a creditor must establish the following elements: (1) the debtor obtained the money or credit through representations that he either knew to be false, or made with suck reckless disregard for the truth as to constitute willful misrepresentations; (2) the debtor possessed an actual intent to deceive; and (3) the creditor justifiably relied on the misrepresentations to its detriment. Mayer v. Spanel Int'l Ltd., 51 F.3d 670, 673 (7th Cir.), cert. denied, 516 U.S. 1008, 116 S. Ct. 563 (1995).

34. A creditor need only prove its case by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991).

35. Most courts have held that card usage carries with it an implied representation to the creditor is that the debtor has only the intent, and not the ability, to repay. Mercantile Bank v. Canovas, 237 B.R. 423, 428 (Bankr. N.D. Ill. 1998). However, lack of ability to repay is one factor a court may consider in determining a debtor's intent. Id.

Case 09-01267    Doc 15    Filed 03/18/10    Entered 03/22/10 11:02:21    Desc Main
            Document      Page 8 of 15

09-01267:9.0:Proposed Findings of Fact and Conclusions of Law:Main Document Entered: 3/15/2010 2:49:56 PM by:David L Freidberg Page 8 of 15

36. The determination of whether the debtor had the requisite intent to defraud is a factual issue to be determined upon review of all relevant circumstances surrounding a particular case. In re Paul, 266 B.R. at 694; In re Berz, 173 B.R. 159 (Bankr. N.D. Ill. 1994).

37. Courts must look at the totality of circumstances to determine whether the debtor's conduct was calculated to deceive or cheat the creditor. Mercantile Bank v. Canovas, 237 B.R. at 428.

38. A review of the commonly cited list of factors is helpful in determining whether a debtor had the intent to deceive when he made the charges. These factors include:

1. the length of time between making the charges and the filing for bankruptcy;

2. whether an attorney had been consulted concerning filing for bankruptcy before the charges were made;

3. the number of charges made;

4. the amount of the charges;

5. the financial condition of the debtor at the time the charges were made;

6. whether the charges were above the credit limit of the account;

7. whether the debtor make multiple charges in the same day;

8. whether the debtor was employed;

9. the debtor's prospects for employment;

10. the financial sophistication of the debtor;

11 whether there was a sudden change in the debtor's buying habits; and

12. whether the purchases were for luxuries or necessities.

In re Dougherty, 84 B.R. 653, 656 (9th Cir. BAP 1988); In re Nguyen, 235 B.R. 76 (Bankr. N.D. Cal. 1999); In re Tsakhniv, 2009 Bankr. LEXIS 3668 (Bankr. N.D. Ill. 2009).

Case 09-01267 Doc 15 Filed 03/18/10 Entered 03/22/10 11:02:21 Desc Main Document Page 9 of 15

09-01267:9.0:Proposed Findings of Fact and Conclusions of Law:Main Document Entered: 3/15/2010 2:49:56 PM by:David L Freidberg Page 9 of 15

In the present case, a review of the evidence presented proves that the Defendant intended to defraud American Express at the time he made the charges at issue or he acted with reckless disregard for the truth as to constitute willfulness.

The Defendants made a large number of charges, fifty-nine (59) totaling $9,990.51, in a short period of time, between July 2, 2009 and August 13, 2009. All of these charges were incurred within approximately two (2) months of the filing of the Defendant's Chapter 7 bankruptcy petition. The Defendant filed his Chapter 7 bankruptcy petition on September 4, 2009. Ninety days prior to the filing date is June 6, 2009. The Defendant incurred $9,990.51 on the Account on or within ninety days of the filing of the bankruptcy petition.

The Defendant used his American Express card in fifty-nine (59) transactions charging $9,990.51 between July 2, 2009 and August 13, 2009. The charges included three (3) charges totaling $2,662.75 at Best Buy; five (5) charges totaling $1,274.51 at Walmart; seven (7) charges totaling $1,262.65 at Costco; one (1) charge in the amount of $706.91 at Orland Toyota; two (2) charges totaling $706.91 at JC Penney Store; one (1) charge in the amount of $658.45 at Babies R Us; one (1) charge in the amount of $491.68 at Casual Male; two (2) charges totaling $183.01 at Burlington Coat Factory; and one (1) charge in the amount of $135.00 at Jerusalem Jewelry.

### Financial condition of the Defendant at the time the charges were made

The Defendant could not have reasonably expected or intended to repay American Express, as well as his other living expenses and unsecured debt, because he had insufficient income and assets from which to do so, according to the Defendant's Schedules and Statement of Financial Affairs. According to Schedule F, the Defendant has $1,249,870.93 in unsecured, nonpriority debt, $25,317.97 of which appears to be credit/charge card debt. Schedules I and J show net monthly income of $0.00 and monthly expenses totaling $3,016.00, leaving negative

Case 09-01267    Doc 15    Filed 03/18/10    Entered 03/22/10 11:02:21    Desc Main
Document    Page 10 of 15

09-01267:9.0:Proposed Findings of Fact and Conclusions of Law:Main Document Entered: 3/15/2010 2:49:56 PM by:David L Freidberg Page 10 of 15

($3,016.00) in disposable income to pay credit/charge card debt. The expense figure does not include payment on any credit/charge card debt. The Defendant's Statement of Financial Affairs, Item #1, lists "income from employment" in the amount of $17,835.00 for 2008 "wages." The Defendant's Statement of Financial Affairs, Item #2, lists "income other than from employment" in the amount of $28,537.00 in 2008 for "Sch D" and $2,910.00 in 2008 for "ch. E." The Defendant knew he was in financial trouble prior to incurring the charges at issue and in reckless disregard, he incurred them anyway.

As of the American Express account statement with a closing date of September 1, 2009, the Defendant owed a total of $15,868.99 to American Express, and a minimum payment of $549.38 was due. American Express' debt constitutes approximately 2% of the Defendant's scheduled unsecured debt on Schedule F.

### Credit Limit

According to the account statement ending September 1, 2009, the Defendant was over his credit limit by $268.99. The Defendant's maximum credit limit at that time was $15,600.00.

### Multiple charges in the same day

A review of the account statements show that multiple charges were made on the following days: July 2, 2009, July 4, 2009, July 5, 2009, July 8, 2009, July 10, 2009, July 11, 2009, July 12, 2009, July 14, 2009, July 16, 2009, July 22, 2009, July 30, 2009, August 1, 2009, August 3, 2009, August 4, 2009, August 5, 2009, August 7, 2009, August 8, 2009, August 9, 2009, August 11, 2009 and August 13, 2009.

Case 09-01267 Doc 15 Filed 03/18/10 Entered 03/22/10 11:02:21 Desc Main Document Page 11 of 15

09-01267:9.0:Proposed Findings of Fact and Conclusions of Law:Main Document Entered: 3/15/2010 2:49:56 PM by:David L Freidberg Page 11 of 15

### The Defendant was employed/prospects for employment

On Schedule I, the Defendant stated that he was unemployed. Nothing has been presented to Plaintiff to indicate that the employment status of the Defendant has changed. On the Statement of Financial Affairs, the Defendant states that he owns a real estate holding business from 2007-present. The Defendant also owned two gas/convenience stations, one from 2003-2009 and the other from 2004-2007.

### Financial Sophistication of the Defendant

With respect to the Defendant's financial sophistication, American Express contends that clearly the Defendant was financially sophisticated. At the least, he was aware of his financial condition at the time the debt was incurred. "A debtor cannot ignore the reality of his financial situation and still maintain that he has a good faith intent to repay." In re Preece, 125 B.R. 474, 478 (Bankr. N.D. Tx. 1991). Indeed, an individual who lacks even the most basic understanding of the areas of finance, credit and lending, surely understands that regardless of their financial situation, he or she is responsible for the payment of their debts.

In the present matter, the Defendant understood that he was responsible for repayment of the charges that he incurred on the Account at issue. He knew that a minimum payment was due on the Account after each billing cycle, as the Defendant had complied with making minimum payments in the past. Plaintiff contends that the Defendant was also aware of his indebtedness to the other credit card companies as listed on Schedule F.

The Defendant is married and runs a household. The Defendant owns a business and previously owned two other businesses. He understood his responsibility to make his mortgage payment, car insurance payment and to pay real estate taxes and property insurance, and utility bills. According to the Chapter 7 Individual Debtor's Statement of Intention, the Defendant will

Case 09-01267 Doc 15 Filed 03/18/10 Entered 03/22/10 11:02:21 Desc Main Document Page 12 of 15

09-01267:9.0:Proposed Findings of Fact and Conclusions of Law:Main Document Entered: 3/15/2010 2:49:56 PM by:David L Freidberg Page 12 of 15

retain and make regular payments on his first mortgage on his residential property located at 8923 W. 174th Street, Tinley Park, IL 60744. For all of these reasons, it can be said that the Defendant is financially sophisticated.

### Luxury or Necessity

Per Schedule I, the Defendant is married and has four (4) children/dependents. The Defendant used his American Express card to purchase luxury items that are not reasonably necessary for the maintenance and support of the Defendant or his dependents. Such charges include three (3) charges totaling $2,662.75 at BEST BUY, an electronics store; two (2) charges totaling $706.91 at JC PENNEY STORE for "better watches, F jewelry Serv, 7-16 bottoms, and 4-7 bottoms;" one (1) charge in the amount of $491.68 at CASUAL MALE; three (3) charges totaling $230.49 at ULTA, a cosmetics store; one (1) charge in the amount of $135.00 at JERUSALEM JEWELRY; and one (1) charge in the amount of $69.10 incurred at GAMESTOP. See In re Tabar, 220 B.R. 701, 704 (Bankr. M.D. Fla. 1998) (purchases are luxury goods or services depending upon whether the item purchased served any significant family function and whether the transactions evidenced some fiscal irresponsibility); In re Ellingsworth, 212 B.R. 326, 341 (Bankr. W.D. Mo. 1997) (the court can decide whether purchases are luxury goods based upon the account statements and nature of the items purchased);

The charges noted above are clearly luxuries and are not reasonably necessary for the maintenance and support of the Defendant or his dependents.

As for the element of reliance, the creditor must show "that it relied upon the Debtor's misrepresentation and that such reliance was both actual and justifiable". In re Eashai, 87 F.3d 1082, 1090 (9th Cir. 1996). An issuer of a credit card establishes actual reliance on the representations of a debtor by showing that it would not have approved the loan in the absence of

Case 09-01267 Doc 15 Filed 03/18/10 Entered 03/22/10 11:02:21 Desc Main Document Page 13 of 15

09-01267:9.0:Proposed Findings of Fact and Conclusions of Law:Main Document Entered: 3/15/2010 2:49:56 PM by:David L Freidberg Page 13 of 15

the debtor's promise to pay (through card-use). In re Mercer, 246 F.3d 391, 415 (5th Cir. 2001). American Express actually relied on the Defendant's representations to pay the charges. American Express would not have allowed the Defendant to incur the charges without the Defendant's representation of his intent to pay.

American Express relied on the Defendant's false representations and was damaged as a result. The Supreme Court in Field v. Mans held that section 523(a)(2)(A) requires that a creditor prove that they "justifiably relied" on a false representation. The objecting creditor must also prove that the creditor's reliance on the debtor's false representation was justifiable. Field v. Mans, 516 U.S. 59, 116 S. Ct. 437, 133 L. Ed. 2d 351 (1995). In determining whether a creditor's reliance is justifiable, the court must look to "the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case." 116 S. Ct. at 444 [quoting Restatement (Second) of Torts §545A cmt. b (1976)]. "The general rule is that a person may justifiably rely on a representation even if the falsity of the representation could have been ascertained upon investigation." In re Eashai, 87 F.3d 1082, 1091 (9th Cir. 1996). A person cannot, however, rely on a representation which is knowingly or obviously false. See Id. A credit card issuer "justifiably relies on a representation of intent to repay as long as the Account is not in default and any initial investigations into a credit report do not raise red flags that would make reliance unjustifiable." In re Anastas, 94 F.3d 1280, 1286 (9th Cir. 1996); See In re Nguyen, 235 B.R. 76 (Bankr. N.D. Cal. 1999).

Based upon industry practice and comments made by bankruptcy courts around the country concerning reliance by creditors in the context of third party credit card transactions, American Express' reliance was justified.

Case 09-01267    Doc 15    Filed 03/18/10    Entered 03/22/10 11:02:21    Desc Main
Document    Page 14 of 15

09-01267:9.0:Proposed Findings of Fact and Conclusions of Law:Main Document Entered: 3/15/2010 2:49:56 PM by:David L Freidberg Page 14 of 15

The Defendant was an American Express cardmember since February of 2007. In the regular course of business, prior to issuing the Account, American Express conducted a credit check. American Express does not have a copy of the credit application for this Account. American Express retains account applications in compliance with Regulation B and the state regulation that pertains to written applications for credit. See 12 CFR 202.12 (Regulation B requires 25 month retention period) and UT Admin Code R331-10-3(4) (Agreement governed by Utah law; requires 24 month retention period). Since the Defendant opened the account in 2007, a physical copy of the document is no longer available.

There was nothing to put Plaintiff on notice of the Defendant's poor financial condition at the time the Defendant submitted the credit application, nor were any "red flags" raised. The Defendant had his American Express card for two years and seven months before he filed for bankruptcy. He maintained his Account in good standing. The Account was not in default. At the time of the charges at issue, American Express had no reason to question the Defendant's promise to repay. American Express sustained damages of $9,990.51 for the charges incurred pre-petition as a proximate result of the Defendant's fraudulent behavior and misrepresentations.

By reviewing the particular circumstances of this case, American Express has demonstrated that the Defendant had no intent or even reasonable expectation of repaying debt to American Express, a fact of which he must have been aware when he made the charges, and the use of the Account was fraudulent. Thus, under 11 U.S.C. §523(a)(2)(A) and (a)(2)(C), the debt owed to American Express is nondischargeable as it was incurred through false pretenses, a false representation, or actual fraud.

Case 09-01267    Doc 15    Filed 03/18/10    Entered 03/22/10 11:02:21    Desc Main
              Document      Page 15 of 15

09-01267:9.0:Proposed Findings of Fact and Conclusions of Law:Main Document Entered: 3/15/2010 2:49:56 PM by:David L Freidberg Page 15 of 15

## CONCLUSION

American Express has demonstrated a prima facie basis for relief under §523(a)(2)(A) and (a)(2)(C) and is entitled to Default Judgment in the amount of $9,990.51, plus attorneys' fees, costs, and interest or any other such relief as the Court may deem appropriate.

_____
Jack B. Schmetterer
United States Bankruptcy Judge

3/15/10

MAR 18 2010